Vehicle Inspection — United States Government — Exempt Vehicles owned by the Federal Government and operated in the State of Oklahoma are not required to bear a vehicle inspection sticker as required by 47 O.S. 851 [47-851] (1968). The Attorney General has considered your letter dated May 28, 1969, where you, in effect, ask the following question: Are vehicles owned by the Federal Government and operated in the State of Oklahoma required to bear a vehicle inspection sticker as required by 47 O.S. 851 [47-851] (1968) et seq.? Section 47 O.S. 854 [47-854] provides for an annual inspection of every motor vehicle, trailer, semitrailer and pole trailer, as defined in this act registered or operated in the State of Oklahoma. This section also provides for the affixing of an inspection sticker on the vehicle provided it meets the requirements of the act. The only definition of motor vehicles included in the act is found at Section 851, which provides as follows: "No person shall drive or move on any highway any motor vehicle, including motorcycles, trailers, semitrailers, or pole trailers, which are licensed by the Oklahoma Tax Commission or exceeding 3,000 pounds in weight, or any combination thereof, unless the equipment upon any and every said vehicle is in good working order and adjustment as required in this Act and said vehicle is bearing an official inspection sticker and is in such safe mechanical condition as not to endanger the driver or other occupant of any vehicle upon the highway; provided, that the provisions of this Act shall not apply to any house trailer, which requires a permit to be moved upon the highways of this State. Laws 1967, c. 362, Section 1." Vehicles owned by the, federal government and operated in the State of Oklahoma are not expressly excluded from the operation of the act. The courts have consistently held that the police and taxing powers of a state cannot rightfully be so exercised as to impede, obstruct, burden or interfere with the execution of national power. McCulloch v. Maryland, 4 Wheat. 316. In Johnson v. Maryland, 254 U.S. 51, the Supreme Court had before it a case where a postal employee was arrested by state authorities while driving a government truck in the transportation of mail over a post road. He was convicted and fined for operating a motor vehicle without having obtained an operator's license from the state. The conviction was set aside, the court stated, in an opinion written by Justice Holmes, at page 58 as follows: "Of course an employee of the United States does not secure a general immunity from state law while acting in the course of his employment. That was decided long ago by Mr. Justice Washington in United States v. Hart. Citations It very well may be that, when the United States has not spoken, the subjection to local law would extend to general rules that might affect incidentally the mode of carrying out the employment — as, for instance, a statute or ordinance regulating the mode of turning at the corners of streets. Citation This might stand on much the same footing as liability under the common law of a State to a person injured by the driver's negligence. But even the most unquestionable and most universally applicable of state laws, such as those concerning murder, will not be allowed to control the conduct of a marshal of the United States acting under and in pursuance of the laws of the United States. Citation "It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them and pay a fee for permission to go on. Such a requirement does not merely touch the Government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the Government has pronounced sufficient. It is the duty of the Department to employ persons competent for their work and that duty, it must be presumed has been performed. Citation" In Mayo et al v. U.S., 319 U.S. 441,87 L.Ed. 1504, a state, without Congressional permission, required the United States to pay a reasonable inspection fee for the inspection of fertilizer distributed to farmers by the federal government as part of its soil building program. The court stated at pages 447 and 448 in part as follows: "These inspection fees are laid directly upon the United States. They are money extractions, the payment of which, if they are enforceable, would be required before executing a function of government. Such a requirement is prohibited by the supremacy clause. . . . Admittedly the state inspection service is to protect consumers from fraud but in carrying out such protection, the federal function must be left free. This freedom is inherent in the sovereignty. The silence of the Congress as to the subjection if its instrumentalities, other than the United States, to local taxation or regulation is to be interpreted in the setting of the applicable legislation and the particular extraction. Citation But where, as here, the governmental action is carried on by the United States itself and the Congress does not affirmatively declare its instrumentalities or property subject to regulation or taxation, the inherent freedom continues." The inspection requirements of federal vehicles appear to do more than merely increase the United States government's cost of doing business. They impose requirements which must be complied with if the vehicles are to be used. It is therefore the opinion of the Attorney General that vehicles owned by the federal government and operated in the State of Oklahoma are not required to bear a vehicle inspection sticker as required by 47 O.S. 851 [47-851] (1968) et seq. (W. Howard O'Bryan Jr.)